## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PERFECT GAME INCORPORATED,

        Plaintiff,

        v.

RISE 2 GREATNESS FOUNDATION,

        Defendant.

)
)
)
)
)
)
)
)
)

C. A. No. N24C-05-052 KMM

Date submitted:  May 28, 2025
Date decided:  June 2, 2025

*Upon defendant's motion to dismiss: **GRANTED***
*Upon defendant's motion for attorneys' fees: **DENIED***

## ORDER ON MOTION TO DISMISS

### A.  *Introduction*

Perfect Game Incorporated ("Perfect Game") filed this action seeking payment of a debt arising from an oral contract between the parties.  The complaint also asserted a fraud claim.  Post-filing, the defendant paid the debt, mooting that portion of the complaint.  The remainder of the complaint was dismissed, under Rule 12(b)(6) and Rule 9(b), with leave to amend.

Perfect Game's Amended Complaint asserts a claim for breach of the oral agreement, seeking recovery of consequential damages.  It also asserts a fraud claim for breach of representations made during the contract negotiations.  The defendant moved to dismiss the Amended Complaint under Rules 12(b)(6) and 9(b).

A breach of contract claim must include a factual basis for the alleged damages. Because the Amended Complaint fails to plead such facts, it does not state a reasonably conceivable basis for recovery of damages, and therefore, the breach of contract claim is dismissed.

The fraud claim also fails because the Amended Complaint does not plead a factual circumstance under which it is reasonably conceivable that Perfect Game is entitled to relief. Accordingly, this claim is dismissed.

The defendant requests an award of attorneys' fees under the bad faith exception to the American Rule. Perfect Game filed an unsuccessful Amended Complaint. This is not a basis to shift fees. The defendant's request for an award of fees is denied.

**B.**   ***Factual and Procedural Background***

**1.**   ***Perfect Game and the Foundation***

Perfect Game was founded by Jerry Ford and operated by Mr. Ford and his family. It is a premiere provider of amateur baseball events, and by 2003, Perfect Game became one of the largest amateur baseball scouting services in the world.[1]

In 2003, Jerry Ford formed a charitable foundation under Internal Revenue Code § 501(c)(3)—Perfect Game Foundation, Inc.[2] The foundation's charitable

---

[1] Amended Complaint ("Am. Com."), ¶¶ 6-7 (D.I. 13).
[2] *Id.*, ¶ 7.

mission is to "giv[e] back to Perfect Game's community."[3] Mr. Ford and his family have always operated the charity independent from Perfect Game.[4]

In 2018, Perfect Game Foundation, Inc. changed its name to Perfect Game Cares Foundation, and in 2023, the name changed to Rise 2 Greatness Foundation (the "Foundation")—the defendant here.[5]

In the spring or summer of 2022, Perfect Game and the Foundation entered into an agreement whereby Perfect Game would "cover" the Foundation's costs for apparel, memorabilia, and holding charitable events.[6] The Foundation was obligated to repay Perfect Game for these costs.

In late 2022, a supermajority ownership interest in Perfect Game "switched hands" from the Fords to purchasers Robert Ponger and Rick Thurman.[7] Thereafter, the Fords "left Perfect Game."[8]

Since divesting their ownership in Perfect Game, the Fords competed with Perfect Game and entered into partnerships and "professional relationships" with

---

[3] *Id.*, ¶ 7.
[4] *Id.*, ¶¶ 7-8.
[5] *Id.*, ¶¶ 8, 13.
[6] *Id.*, ¶ 9.
[7] *Id.*, ¶ 12.
[8] *Id.*

some of Perfect Game's sponsors and entities with other connections to Perfect Game.[9]

### 2. *The Foundation Failed to Repay Perfect Game.*

Perfect Game advanced funds to the Foundation in November and December 2022, February 2023, and January 2024, totaling $32,434.44 (the "Debt"). Perfect Game sent invoices to the Foundation, which it failed to pay. Perfect Game sued to recover the Debt.

Subsequent to filing this action, the Foundation paid the Debt to Perfect Game, plus interest and costs. The claim for the Debt was then dismissed as moot.[10]

### 3. *The Foundation's Fraudulent Representations and Perfect Game's Damages*

Sometime in the spring or summer of 2022, in connection with the negotiations over the oral agreement, "Jennifer Ford and/or other members of the Ford family represented to Perfect Game" that the Foundation's hosted events "would be operated in a reasonably diligent manner," the funds raised by the Foundation "would be used for charitable purposes" and "dedicated to underprivileged children."[11] "Upon information and belief," the Foundation made

---

[9] *Id.*, ¶ 14. The Amended Complaint does not provide any additional facts relating to the alleged competition or the business relationships, and there are no damages alleged flowing from these actions.

[10] D.I. 14.

[11] Am. Com., ¶ 10.

these representations to induce Perfect Game to enter into the cost covering agreement.[12] And "[u]pon information and belief," the Foundation knew these statements were false.[13] Relying on these representations, Perfect Game provided funds to cover the Foundation's costs, as described above.[14]

Perfect Game alleges that the Foundation breached the representations when it retained funds raised for charitable purposes for an extended period of time and did not donate all the funds raised to charitable organizations.[15] For example, the Foundation raised over $110,000 for the Make-A-Wish Foundation in August 2022 in connection with Perfect Game's All American Classic.[16] But the Foundation donated only approximately $60,000 to Make-A-Wish and did not do so until three months after the money was raised.[17] "Upon information and belief," the remainder of the funds were retained for the Fords' benefit.[18] By delaying the donation to Make-A-Wish, and failing to make a full donation, the Foundation injured Perfect Game's name and business reputation.[19]

---

[12] *Id.*
[13] *Id.*, ¶ 47.
[14] *Id.*, ¶ 11.
[15] *Id.*, ¶¶ 22-23.
[16] *Id.*, ¶ 23.
[17] *Id.*
[18] *Id.*
[19] *Id.*, ¶ 24. The Amended Complaint contains no facts explaining when, how, or why Perfect Game's name and reputation were injured.

5

Additionally, the Foundation administered the All American Classic in an unsafe and unprofessional manner by failing to properly supervise the disabled children in attendance and failing to clean up after the event, leaving the site in "shambles."[20]

At the time of the All American Classic, the Foundation's name was "Perfect Game Cares Foundation." The event was held at the Arizona Diamondbacks' (a Perfect Game client) home ballpark.[21] Perfect Game received complaints from the Diamondbacks "regarding the event."[22] Shortly thereafter, Perfect Game's contract with the Diamondbacks was not renewed.[23]

Finally, the Fords are alleged to have used charitable funds to pay their personal expenses.[24]

### 4. *Claims Asserted*

Perfect Game filed this action asserting claims for breach of contract, fraud, and an accounting based on an alleged breach of fiduciary duties. The Foundation filed a Motion for Judgment on the Pleadings. The Court granted the motion, dismissing the contract claim for the Debt as moot, the fraud claim for failure to state a claim and failure to plead with particularity, and the breach of fiduciary duty claim

---

[20] *Id.*, ¶ 24.
[21] *Id.*, ¶¶ 24-26.
[22] *Id.*, ¶ 26.
[23] *Id.*
[24] *Id.*, ¶¶ 27-30. The Amended Complaint offers no facts beyond these conclusory allegations of misuse of funds.

6

for lack of jurisdiction.  The Court granted leave for Perfect Game to file an amended complaint for breach of contract (to the extent not mooted) and fraud.

In the Amended Complaint, Perfect Game asserts a breach of contract claim, alleging that it suffered consequential damages "stemming from the funds [the Foundation] wrongfully and without justification withheld from Perfect Game for years."[25]

The Amended Complaint also asserts a fraud claim.  Perfect Game alleges that it justifiably relied on the Foundation's representations regarding its purpose and use of raised funds.[26]  "[T]hese representations were made with the intent to leverage Perfect Game's goodwill and to induce Perfect Game into extending sums to [the Foundation] so that [it] could further its fraudulent charitable enterprise.  Therefore, [the Foundation's] misrepresentation to Perfect Game constitute[d] a willful misrepresentation of a material fact."[27]

C.    *Standard of Review*

Under Superior Court Civil Rule 12(b)(6), the court accepts as true all well pleaded factual allegations and draws all reasonable inferences in favor of the non-

---

[25] *Id.*, ¶ 42.
[26] *Id.*, ¶¶ 45-46.
[27] *Id.*, ¶ 47.

moving party. Dismissal will be denied if there is a reasonably conceivable set of circumstances of recovery on the claim.[28]

Delaware's pleading standard is "minimal," but the liberal construction afforded to a claimant does not "extend to 'conclusory allegations that lack specific supporting factual allegations.'"[29] Accordingly, the court should dismiss a complaint if the plaintiff fails to make "specific allegations supporting each element of a claim or if no reasonable interpretation of the alleged facts reveals a remediable injury."[30]

## D. *The Parties' Contentions*

The Foundation argues that the contract claim must be dismissed because Perfect Game asserts only conclusory allegations of consequential contractual damages and fails to plead any factual support for such damages. Additionally, consequential damages are not recoverable in a breach of contract action.

The Foundation argues that the fraud claim must be dismissed because the fraud claim is bootstrapping the contract claim, and Perfect Game failed to plead fraud with the requisite particularity.

---

[28] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC,* 27 A.3d 531, 536-37, n.13 (Del. 2011).

[29] *Id.; Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan. 13, 2021) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[30] *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *2 (Del. Super. Dec. 13, 2021) (citing *Surf's Up*, 2021 WL 117036, at *6).

Perfect Game counters that it would be improper for the Court to determine at this stage of the case whether its alleged damages are direct or consequential. Further, consequential damages are recoverable in contract actions. Perfect Game argues that it has properly alleged consequential damages.

Perfect Game also argues that its fraud claim is not improper bootstrapping because it is based on false representations used to induce Perfect Game to enter into a contract with the Foundation. Accordingly, it asserts that the fraud claim is pled with sufficient particularity.

**E.** *Discussion*

**1.** *The Contract Claim*

To adequately plead a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract; (2) that the contract was breached; and (3) damages suffered as a result of the breach."[31] Each element must be supported by specific factual allegations; conclusory statements are insufficient.[32] Additionally, generally referring to a contract will not sustain a claim. "A party must identify the particular contractual terms that were breached."[33]

---

[31] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *3 (Del. Super. June 27, 2016).
[32] *Festival Fun Parks, LLC v. MS Leisure Co.*, 2023 WL 8714994, at *4 (Del. Super. Dec. 18, 2023).
[33] *Marydale Pres. Assocs., LLC v. Leon N. Weiner & Assocs., Inc.*, 2022 WL 4446275, at *17 (Del. Super. Sept. 23, 2022).

Whether damages are direct or consequential is a relative determination; that is, damages in context of one contract may be direct but the same damages in the context of another contract may be consequential.[34] Therefore, courts typically do not make a categorization determination at the motion to dismiss stage,[35] and the Court will not do so here.

No matter how the alleged damages are categorized, Perfect Game fails to plead recoverable damages. The Amended Complaint alleges that the funds Perfect Game advanced for the Foundation's expenses "would otherwise have been used in furtherance of Perfect Game's revenue-generating operations"[36] and therefore, the Foundation "remains liable for consequently [*sic*] damages stemming from the funds [the Foundation] wrongfully and without justification withheld from Perfect Game for years."[37] These conclusory allegations are insufficient because there is no factual basis for consequential or direct damages. To the extent Perfect Game is alleging that it was deprived of the use of funds the Foundation failed to timely pay, Perfect

---

[34] *Pharmaceutical Prods. Dev., Inc. v. TVM Life Science Ventures VI, L.P.*, 2011 WL 549163, at *7 (Del. Ch. Feb. 16, 2011).
[35] *Id.*
[36] Am. Com., ¶ 39.
[37] *Id.*, ¶ 42.

Game has already been compensated for that loss.[38]  The Foundation paid Perfect Game the full amount it claimed for prejudgment interest.[39]

In its answering brief, Perfect Game states that it seeks recovery of "lost profits arising from the cancellation of [its] contract with the Arizona Diamondbacks for the use of Chase Field to put on Perfect Game events."[40]  Perfect Game's theory to recover these damages is that as a result of the Foundation's actions (or inactions) at the All American Classic at the Diamondbacks' stadium, Perfect Game "lost foreseeable, well-established profits, during the period of the contractual relationship between" Perfect Game and the Foundation.[41]  Perfect Game's attempt to further amend the Amended Complaint through its brief is impermissible.[42]  But even considering this assertion, the breach of contract claim still fails.

As pled, the terms of the contract required the Foundation to repay Perfect Game for costs it advanced, and the Foundation breached the contract by not timely

---

[38] *Fortis Advisors, LLC v. Dematic Corp.*, 2023 WL 2967781, at *1 (Del. Super. Apr. 13, 2023) ("Prejudgment interest serves two purposes: (1) compensating the plaintiff for the lost use of its money; and (2) divesting the defendant of any benefit it received by retaining the plaintiff's money during the case's pendency.").

[39] D.I. 14.

[40] Answering Brief ("AB"), ¶ 12 (D.I. 16).  The Amended Complaint alleges that "[a]s a result of [the Foundation's] actions, Perfect Game has suffered and will suffer substantial damages, including, among other things, lost revenue and further costs and expenses incurred in order to uncover and confirm Defendant's unlawful conduct[.]"  To the extent Perfect Game is attempting to assert a claim for attorneys' and costs of this action, it has not pled an exception to the American Rule (discussed below).

[41] AB, ¶ 12.

[42] *Light Years Ahead, Inc. v. Valve Acquisition, LLC,* 2021 WL 6068215, *12 (Del. Super. Dec. 22, 2021) ("Delaware law is clear that briefs do not amend the pleadings."); *Fortis Advisors LLC v. Medtronic Minimed, Inc.,* 2024 WL 3580827, at *8, n.87 (Del. Ch. July 29, 2024).

11

paying the invoices.[43]  The Foundation is not alleged to have had any contractual obligation to Perfect Game relating to the Diamondbacks event, or any event.  The contract was simply a debt obligation.  There are no allegations in the Amended Complaint (or the answering brief) that cancellation of Perfect Game's Diamondbacks contract resulted from the Foundation's failure to pay the Debt.[44]  As such, it is not reasonably conceivable that the damages Perfect Game alleges were proximately caused by the breach of contract.

At oral argument, Perfect Game argued that the oral agreement included the right granted to the Foundation to continue to use the name "Perfect Game" after the 2022 buyout, and therefore, the Foundation was obligated to operate events, such as the All American Classic, in a safe manner.  There are no such allegations in the

---

[43] Am. Com., ¶ 9 ("Perfect Game thereafter entered into an agreement with [the Foundation] to cover costs incurred by [the Foundation] while the nonprofit purchased apparel and memorabilia, and planned and executed its charity and philanthropic events."); ¶ 11 ("Perfect Game in fact paid for numerous expenses incurred by [the Foundation], for which [the Foundation] was contractually obligated to reimburse Perfect Game."); ¶ 15 ("Despite [the Foundation's] contractual obligation to reimburse Perfect Game for the monies it paid when covering the costs incurred by [the Foundation], at the time of the filing of Plaintiff's initial Complaint, [the Foundation] had failed to reimburse Perfect Game to date."); ¶ 16 (alleged the Foundation owed Perfect Game $32,434.44); and ¶ 41 (the Foundation "breached the terms of the parties' contract when [the Foundation] failed to reimburse Perfect Game for the monies it paid on [the Foundation's] behalf.").

[44] See Axogen Corp. v. Integra LifeSciences Corp., 2021 WL 5903306, at *2 (Del. Super. Dec. 13, 2021); Wellgistics, LLC v. Welgo, Inc., 2024 WL 4327343, at *8 (Del. Super. Sept. 27, 2024) ("While damages may be pled generally, a factual basis to relate the alleged injury to the breach is required.") (citing Phage Diagnostics, Inc. v. Corvium, Inc., 2020 WL 1816192, at *9 (Del. Super. Mar. 9, 2020)) (while damages may be pled generally even in fraud claims, a plaintiff "must relate its alleged injury to the misrepresentations that constitute its grounds for fraud such that the issue of damages may be inferred from the complaint.").

Amended Complaint. Perfect Game's attempt to further amend its complaint through argument is impermissible and will not be considered.

Count I fails to state a claim and must be dismissed.

### 2. *The Fraud Claim*

To state a claim for fraud, a party must allege:

> (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[45]

Delaware law requires a claimant to plead fraud with particularity.[46] To satisfy Rule 9(b), a fraud claim must allege: "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[47] "Essentially, the [claimant] is required to allege the circumstances of the fraud with detail sufficient to apprise the [opposing party] of the basis for the claim."[48]

---

[45] *Everphone, Inc. v. Go Tech. Mgmt., LLC*, 2023 WL 7996560, at *4 (Del. Super. Nov. 17, 2023) (citing *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005)).
[46] Super. Ct. Civ. R. 9(b); *Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, 2006 WL 2567916, at *25 (Del. Super. Aug. 31, 2006) ("Superior Court Civil Rule 9(b) requires that '[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity.'").
[47] *Medlink Health Sols., LLC v. JL Kaya, Inc.*, 2023 WL 1859785, at *2 (Del. Super. Feb. 9, 2023) (quoting *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006)).
[48] *Id.*

To avoid a double recovery for the same alleged wrongdoing, the anti-bootstrapping rule precludes a claimant from morphing a contract claim into a tort claim.[49] Thus, the anti-bootstrapping rule bars a fraud claim that "merely 'adds the term fraudulently induced to a complaint or alleges that the defendant never intended to comply with the agreement at issue at the time the parties entered into it[.]'"[50] "'To survive as a separate claim, a fraud claim must be collateral to the breach of contract claims. The party asserting fraud must plead damages separate and apart from the alleged damages for breach of contract. The fraud damages must be more than a 'rehash' of the contract damages . . . .'"[51]

Perfect Game argues that its fraud claim is not bootstrapping its contract claim[52] because the fraud claim is based on conduct before the parties entered into the oral contract. While it is correct that conduct prior to entering into a contract can support a fraud claim and not violate the anti-bootstrapping rule, the timing of the

[49] *Mosaic US Holdings LLC v. Atlas Tech. Sols., Inc.*, 2025 WL 483064, at *6 (Del. Super. Jan. 22, 2025) (citing *CoVenture - Burt Credit Opportunities GP, LLC v. Coleman,* 2023 WL 7179488, at *10 (Del. Super. Nov. 1, 2023)).

[50] *CoVenture,* 2023 WL 7179488, at *10 (quoting *Levy Fam. Invs. V. Oars + Alps LLC*, 2022 WL 245543, at *7-8 (Del. Ch. Jan. 27, 2022)).

[51] *CoVenture,* 2023 WL 7179488, at *10 (quoting *AFH Holding Advisory, LLC v. Emmaus Life Scis., Inc.*, 2013 WL 2149993, at *13 (Del. Super. May 15, 2013).

[52] A fraud claim cannot be bootstrapping if there is no viable contract claim. *Mosaic US Holdings LLC v. Atlas Tech. Sols., Inc.*, 2025 WL 483064, at *6 (Del. Super. Jan. 22, 2025) (quoting *Levy Fam. Invs.,* 2022 WL 245543, at *8 ("the anti-bootstrapping rule does not prevent parties from bringing a fraud claim if . . . (4) the breach of contract claim is not well-pled such that there is no breach claim on which to bootstrap the fraud claim."). Even though the breach of contract is being dismissed, Perfect Game asserted a viable contract claim, which has now been mooted. Therefore, the anti-bootstrapping rule may still apply.

conduct alone is not sufficient. Perfect Game's fraud claim does not allege separate or viable damages. In the "DAMAGES" section of the Amended Complaint, Perfect Game alleges that it "suffered substantial damages, including . . . lost revenue and further costs" to uncover the Foundation's behavior[53] and damage to its business reputation.[54] But it does not differentiate the alleged damages amongst the two claims. In the fraud count, Perfect Game asserts, in conclusory fashion, that it was injured as a result of the Foundation's fraudulent representations "and is entitled to monetary damages."[55] These allegations are insufficient to state a reasonably conceivable set of circumstances of recovery on the claim.

In its answering brief, Perfect Game alleges that it has pled separate and "concrete extra-contractual damages," *i.e.* loss of the Diamondbacks contract.[56] This argument does not save the fraud claim.

Perfect Game claims that it was fraudulently induced to enter into the oral contract, and had it known that the Foundation's representations were false, it would not have entered into the agreement.[57] Under this theory, Perfect Game was harmed by undertaking the obligation to advance costs to the Foundation. But there are no

---

[53] Am. Com., ¶ 34.
[54] *Id.*, ¶ 36.
[55] *Id.*, ¶ 48.
[56] AB at ¶ 20. This is the exact damage it relied on in the contract claim. Because the Court found that the loss from the non-renewal of the Diamondbacks contract was not recoverable as part of the contract claim, the Court will consider this alleged damage in the context of the fraud claim.
[57] The elements for fraud and fraudulent inducement are the same. *Trifecta Multimedia Holdings Inc. v WCG Clinical Servs. LLC,* 318 A.3d 450, 467 (Del. Ch. 2024).

facts asserted to allege that the loss of the Diamondbacks contract flowed from inducement to enter into the oral contract.

At oral argument, Perfect Game argued that it is also seeking to enforce the pre-contract representations as an independent duty, stating that the Foundation breached the representations by running a sham charity and failing to diligently operate events. But the Amended Complaint makes clear that the representations were made to *induce* Perfect Game to enter into the contract.[58] Perfect Game cannot amend its complaint through oral argument.

Because the Court has determined that the fraud claim fails to state a claim under Rule 12(b)(6), it does not reach the question of whether the claim was pled with sufficient particularity.

### 3. *The Foundation is not entitled to fee shifting*

The Foundation claims that it is entitled to an award of attorneys' fees under the bad faith exception to the American Rule.

Under the American Rule, a prevailing party is expected to cover its own litigation expenses. Courts recognize an exception to the American Rule where a party engages in bad faith litigation. "Although '[t]here is no single standard of bad

---

[58] Am. Com., ¶ 17 ("Perfect Game would not have entered into the contract with Defendant had it known that Defendant planned to breach its express promise to reimburse Perfect Game for the monies it incurred in covering Defendant's expenses and did not intend to honor the representations" [that the Foundation's hosted events "would be operated in a reasonably diligent manner," the funds raised by the Foundation "would be used for charitable purposes" and "dedicated to underprivileged children."]).

16

faith that justifies an award of attorneys' fees—whether a party's conduct warrants fee shifting under the bad faith exception is a fact-intensive inquiry."[59] "A claimant must 'demonstrate by clear evidence that the party against whom fees are sought acted in bad faith' and 'Delaware courts have declined to engage in fee shifting when the evidence of bad faith was less than clear.'"[60] Indeed, bad faith fee shifting is granted only in "extraordinary circumstances" where the conduct is "egregious" and fee shifting is used as a tool to deter "abusive litigation and protect the integrity of the judicial process."[61]

To support its claim for attorneys' fees, the Foundation argues that after it paid the Debt, which mooted the contract claim, it "was abundantly clear" that Perfect Game failed to state a claim for consequential damages or fraud, and Perfect Game made "no effort" to meet its pleading burden in the Amended Complaint. Rather, it included "false and irrelevant allegations designed to smear [the Foundation] and disparage its reputation."

[59] *Schatzman v. Mod. Controls, Inc.*, 2024 WL 4249939, at *18 (Del. Super. Sept. 20, 2024) (quoting *Auriga Cap. Corp. v. Gatz Properties*, 40 A.3d 839, 880–81 (Del. Ch. 2012), *judgment entered sub nom. Auriga Cap. Corp. v. Gatz Properties, LLC* (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012)).

[60] *Schatzman*, 2024 WL 4249939, at *18 (citing *Kuratle Contracting, Inc. v. Linden Green Condo., Ass'n*, 2014 WL 5391291, at *11-12 (Del. Super. Oct. 22, 2014) and *E.I. du Pont de Nemours & Co. v. Medtronic Vascular, Inc.*, 2013 WL 1792824, at *2 (Del. Super. Apr. 24, 2013), *aff'd sub nom. E.I. Du Pont Nemours & Co. v. Medtronic Vascular, Inc.*, 77 A.3d 271 (Del. 2013) (internal citation omitted)) ("Where there is a 'colorable basis' for a claim, the award of attorneys' fees and costs is unwarranted.").

[61] *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) (citation omitted); *Schatzman*, 2024 WL 4249939, at *18.

The Foundation's allegations of bad faith do not justify fee shifting. Simply because the Amended Complaint did not survive the motion to dismiss is not a basis to find bad faith. And the Foundation relies on conclusory statements of alleged bad behavior, falling far short of establishing egregious litigation practice. Therefore, the Foundation's request is denied.

## F.     *Conclusion*

The Amended Complaint fails to state a claim for breach of contract and fraud, and therefore it is **DISMISSED**. Because this is the second attempt to plead these claims, the Amended Complaint is dismissed **WITH PREJUDICE**.

The Foundation's request for fee shifting is **DENIED**.

**IT IS SO ORDERED**.

> */s/Kathleen M. Miller*
> Kathleen M. Miller, Judge